**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3333-22

A.S.[1]

Plaintiff-Respondent,[2]

v.

C.P., JR.,

Defendant-Appellant.

________________________

Submitted March 25, 2025 – Decided April 8, 2025

Before Judges Smith and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-2869-23.

Tamara Laniece Sharp, attorney for appellant.

Respondent has not filed a brief.

---

[1] We use initials and pseudonyms to protect the parties' privacy and the confidentiality of these proceedings in accordance with Rule 1:38-3(d)(10).

[2] Plaintiff's brief was suppressed by court order. Accordingly, we consider only defendant's merits brief.

PER CURIAM

Defendant C.P., Jr. appeals from a final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Based on our review of the record, we conclude the trial court failed to make sufficient findings of fact and conclusions of law pursuant to Rule 1:7-4. Accordingly, we vacate the FRO, reinstate the amended temporary restraining order (TRO) in favor of plaintiff, and remand for a new trial consistent with this opinion.

I.

Plaintiff and defendant are divorced and have been litigating custody issues involving their twin sons for years. The relationship between the parties is very contentious, with each party apparently obtaining multiple TROs against the other.

We discern the salient facts from the record of the two-day hearing on plaintiff's application for a FRO against defendant, at which both parties were represented by counsel. Although plaintiff, plaintiff's expert Timothy Primrose, Officer William Walenda, and defendant testified on a host of issues, we recount only those facts relevant to the appeal before us.

On March 23, 2023, a TRO was entered against defendant, on plaintiff's application, based on allegations he made "false statements to police and [the Division of Child Protection and Permanency] that [plaintiff] sexually assaulted her juvenile sons while defendant [was] on supervised federal release in violation of N.J.S.A. 2C:33-4(e) . . . ." The TRO was amended the next day to include a violation of the restraining order and additional acts of domestic violence, including ongoing harassment.[3]

Plaintiff testified defendant attempted to harass her and have her arrested for violating defendant's TRO against plaintiff by "concoct[ing] a ridiculous story with his wife that [plaintiff] sent [defendant's wife] an [Instagram message]." Plaintiff asserted she filed for a TRO against defendant "because [she was] scared for [her] safety and [she was] exacerbated at the lengths that [defendant would] go . . . to harass [her] on a continuous basis." Plaintiff surmised defendant was retaliating against her for cooperating with the police in an ongoing criminal investigation against him.

[3] Neither a copy of the amended TRO nor any of its supplemental documentation was included in the record on appeal. Plaintiff only read a portion of the amended TRO into the record: "Since I obtained the restraining order, the defendant violated the restraining order and/or committed additional acts of domestic violence. I have detailed what happened below."

Plaintiff offered the testimony of a forensic consulting expert, Timothy Primrose, who evaluated the Instagram message. Primrose used computer software to download data from plaintiff's Instagram account to view all messages she received, sent, and deleted within the relevant thirty-day period. Primrose determined there was no data showing an Instagram message was sent to defendant's wife. He concluded the image of the Instagram message "appear[ed] to be fabricated" and a software application was used to create a fake Instagram message. Defendant testified he did not fabricate the Instagram message.

During plaintiff's cross-examination, plaintiff passed a note to her attorney and defendant's counsel objected. The trial judge did not permit plaintiff's counsel to read the note into the record, however, plaintiff's counsel stated the note did not "say anything of essence" and had "nothing to do with [plaintiff's] testimony." The trial judge explained "I saw it . . ." and did not take any further action.

After considering the evidence proffered at the hearing, the trial court entered a FRO in favor of plaintiff finding defendant's actions "were inappropriate," "harassing in nature," and "a clear act of harass[ing], annoying conduct." The court determined defendant's actions violated N.J.S.A. 2C:33-

4(c)[4] because they were repeated actions potentially aiming to "get an advantage in the custody arrangement." The court found there was "annoying conduct on [defendant's] part and there [was] a history . . . of such annoying conduct" as required under Silver[5] such that the court granted plaintiff's application for a FRO.

This appeal followed.

II.

A.

We begin by acknowledging our review of a FRO is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and

---

[4] N.J.S.A. 2C:33-4(c) states in pertinent part:

> a person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> . . . .
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[5] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

more ordinary differences that arise between couples.'" Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)); see also S.K. v. J.H., 426 N.J. Super. 230, 238 (App. Div. 2012). Findings by a trial court "are binding on appeal when supported by adequate, substantial, credible evidence." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

A trial court's order must be tethered to the applicable legal principles as well as the underlying facts of the matter in order for us to substantively address the issues on appeal. Rule 1:7-4(a) states, in pertinent part, "[t]he court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right, and also as required . . . ." See also Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996) (reasoning the trial court is "under a duty to make findings of fact and to state reasons in support of their conclusions"). We are constrained to vacate a FRO where Rule 1:7-4 findings are not clearly set forth. See Gnall v. Gnall, 222 N.J. 414, 428 (2015) ("Failure to make explicit findings and clear statements of reasoning [impedes meaningful appellate review and] constitutes a disservice to

the litigants, the attorneys, and the appellate court.") (internal quotation marks omitted).

B.

When determining whether to grant a FRO pursuant to the PDVA, a trial court must make two determinations. Silver, 387 N.J. Super. at 125-27. "First, the [court] must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. After finding a predicate act, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R. v. M.K.G., 467 N.J. Super. 308, 322 (App. Div. 2021).

For the predicate act of harassment to be established, the trial court must make a fact-sensitive finding as to whether the defendant acted with a purpose to harass. See Corrente v. Corrente, 281 N.J. Super. 243, 249 (App. Div. 1995) ("Integral to a finding of harassment . . . is the establishment of the purpose to harass, which is set forth in the statute itself."); see also J.D., 207 N.J. at 483-84 (detailing examples of when conduct does not demonstrate a "purpose to harass").

We lack the ability to substantively evaluate defendant's assertion that the FRO was improperly entered here because the trial court did not place any credibility or factual findings on the record as required under Rule 1:7-4. The trial court failed to set forth any findings as to whether defendant acted with a purpose to harass plaintiff as required under the first Silver prong.

Instead, the trial court determined, in a conclusory manner, it was "satisfied" defendant's repeated harassment of plaintiff was "shown . . . maybe to get an advantage in the custody arrangement, maybe not, but clearly this [c]ourt finds that [there is] annoying conduct on his part and there is a history here of such annoying conduct." The court cited to the "incident in Voorhees" to support the finding of Silver's first prong, without explaining the reference to the incident.

The trial court also failed to set forth its findings of fact and conclusions of law that a restraining order is necessary to protect plaintiff from future danger under the second Silver prong. See Silver, 387 N.J. Super. at 127 (the second inquiry is "whether a domestic violence restraining order should be issued"). The trial court only found "there is a history of such annoying conduct," but failed to evaluate the factors under N.J.S.A. 2C:25-29(a) and make a substantive finding on the second Silver prong.

The trial court also did not make credibility findings as to any of the witnesses who testified. A FRO must be entered on a totality-of-the-circumstances analysis predicated on evidence the trial court finds credible. See C.C., 463 N.J. Super. at 436 (finding "the credible evidence in the record support[ed] the [trial] judge's decision that the FRO was necessary to protect plaintiff from immediate danger or future abuse" where "plaintiff's testimony established the totality of defendant's conduct placed her in fear") (emphasis added).

C.

Defendant's remaining arguments center around purported due process errors which were not raised to the trial court. Defendant argues he did not have time to adequately prepare for cross examination of Primrose, plaintiff's expert, and the trial court erred in not allowing defendant to secure the testimony of his parole officer and the federal judge whom plaintiff purportedly contacted regarding defendant. Defendant also posits the trial court erred in not examining the written questions and "irrelevant notes" being passed from plaintiff to her attorney on the witness stand, maintaining the trial court "should have demanded the notes be handed directly to him, or held for [in-camera review], then made a decision."

Without findings of fact, credibility determinations, and conclusions of law, we are unable to determine whether the other procedural due process errors that defendant now raises meet the plain error standard. See R. 2:10-2 (stating plain error is an error "clearly capable of producing an unjust result."); State v. Robinson, 200 N.J. 1, 20 (2009) (explaining reviewing courts generally will not consider "questions or issues not properly presented to the trial court . . . unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest").

Furthermore, the due process arguments raised by defendant compel us to direct the Presiding Judge of the Family Part to assign this case to a different judge to conduct a new trial on remand. The trial court's conclusory ruling lends itself to the perception that it might be unduly committed to its initial decision. See Graziano v. Grant, 326 N.J. Super. 328, 349 (App. Div. 1999) (stating the power to remand a case to a different trial judge "may be exercised when there is a concern that the trial judge has a potential commitment to [their] prior findings"); Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023) (remanding a matter to a different trial judge as the judge who decided the matter originally "may have a commitment to [their] prior findings").

To the extent we have not addressed them, any remaining contentions raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

The FRO is vacated, the amended TRO entered in favor of plaintiff and against defendant is reinstated, and the matter is remanded to the trial court for a new trial with a different judge, consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division